IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND G. JACKSON, | ) |
| | ) |
| Plaintiff, | )   2:05-cv-1779 |
| | ) |
| v. | ) |
| | ) |
| LIGHT OF LIFE MINISTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court for consideration and disposition is DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (*Document No. 4*), with exhibits and a brief in support. Plaintiff filed a BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (*Document No. 9*) and supporting exhibits. The motion will be granted.

Procedural and Factual Background

Plaintiff Raymond Jackson ("Jackson") was employed by Defendant Light of Life Ministries, Inc. ("Light of Life"), for approximately two years as a part-time program aide. Although the record does not describe the duties of a program aide, it is undisputed that Jackson's duties did not require him to provide religious counseling, conduct religious services, or participate in religious activities. Jackson is a Jehovah's Witness. Light of Life holds itself out as a Christian agency. Light of Life informed Jackson that he would not be hired for a full-time position because of his religion. In August 2004, Jackson filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination for the

failure to hire him full-time.  In November 2004, Jackson was removed from the part-time work schedule and in January 2005, Jackson was terminated.  Jackson alleges that his termination was in retaliation for filing charges with EEOC.  The Complaint in this case has two counts: (1) failure to hire; and (2) retaliation/termination.

Defendant filed the instant motion on March 10, 2006, which is directed to Count 1 of the Complaint (failure to hire).  Federal Rule of Civil Procedure 12(b) states that if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given a reasonable opportunity to present all pertinent materials.  Defendant explicitly gave notice that it was seeking to introduce extrinsic evidence and convert the motion to dismiss into a motion for summary judgment.  Defendant has submitted an affidavit from David G. Bugher, Executive Director of Light of Life, and copies of its Mission Statements, Doctrinal Statement, Articles of Incorporation, Statement of Faith and Core Values.  Plaintiff has recognized that defendant seeks summary judgment and his brief discusses the summary judgment standard of review.  Plaintiff has submitted extrinsic evidence in opposition to summary judgment in the form of an EEOC Determination Letter and a newspaper article.  As Defendant's request to convert to summary judgment is explicit and both parties have had notice and the opportunity to present evidence in support of their respective positions, the Court will convert the motion to one for summary judgment.  *In re Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287-88 (3d Cir. 1999) (citing *Hilferty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996)).

Plaintiff alleges that Light of Life failed to hire him because of his religion, in violation of Title VII.  Defendant cites to Section 2000e-1, which permits religious organizations to

discriminate on the basis of religion.  The dispositive issue regarding this motion is whether Light of Life is a "religious" organization as defined in Title VII, 42 U.S.C. § 2000e-1.  Light of Life has submitted corporate documents that make numerous references to the organization's religious purpose.

A Mission Statement and Statement of Faith were contained in the Employee Handbook that Jackson received at the time he was hired. The Light of Life Mission Statement was revised during Jackson's employment.  Both versions explicitly refer to the religious mission of the organization:

> Light of Life Ministries is a private, non-profit Christian Agency dedicated to serving homeless and needy people of Southwestern Pennsylvania by providing food, shelter and hope through a continuum of outreach and residential programs. The organization will endure as a ministry grounded on the teachings of the Lord Jesus Christ and as a caregiver, advocate and leader on behalf of homeless and needy people.
>
> As a ministry of Jesus Christ, Light of Life will provide a home for the homeless and food for the hungry, and will build disciples for the Kingdom of God among the poor, addicted, abused, and needy.

Bugher Affidavit, Exhibit A.

Light of Life has a corporate Doctrinal Statement which provides that its doctrinal standards "shall be those commonly held by the Protestant and Evangelical Churches."  The document pledges that Light of Life's teaching ministry will be in harmony with the Whole Bible, the Precious Blood, the New Birth and the Separated Life.  *Id.*  Light of Life has a Statement of Faith containing seven points:

1. We believe the Bible to be the only inspired, infallible and authoritative Word of God.

2. We believe that there is one God, eternally existent in three persons: Father, Son and Holy Spirit.

3.       We believe in the deity and humanity of Christ, in His Virgin Birth, in His sinless life, in His miracles, in His vicarious and atoning death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, in His present rule as head of the church and in His personal return in power and glory.

4.       We believe that for the salvation of sinful men and women regeneration by the Holy Spirit is absolutely essential.

5.       We believe in the present ministry of the Holy Spirit, by whose indwelling a Christian is enabled to live a godly life.

6.       We believe in the resurrection of both the saved and the lost, they that are saved unto the resurrection of life and they that are lost unto the resurrection of damnation.

7.       We believe in the spiritual unity of believers in our Lord Jesus Christ, with equality across racial, gender and class differences.

Light of Life has also published a statement of its "Core Values." There are section headings titled: "Jesus Christ is our Foundation," "All Persons Have Dignity and Worth," "Integrity Before God and Man" and "Relentless Pursuit of Excellence." There are numerous points in each section, with each of the "core values" containing citations to passages in the Bible. Bugher Affidavit, Exhibit C.

The Articles of Incorporation as a not-for-profit corporation were filed in 1952. At that time, the organization was named Harbor of Hope Rescue Mission. One of the express purposes set forth in the Articles of Incorporation was "to hold gospel services and meetings and to administer to the spiritual needs of homeless and needy people by teaching and advancing the practices of the Christian religion." Bugher Affidavit, Exhibit B.

Bugher's affidavit states that Light of Life receives support from various sources including individual donors and churches. Bugher further states that Light of Life's purpose has remained unchanged from that stated in the Articles of Incorporation, and that it continues to

preach the gospel and minister to the homeless and needy. As part of its mission and purpose, Light of Life operates a shelter program and a soup line. Light of Life also operates a Christ-centered addiction recovery program for homeless men. The program has five components, one of which is "discipleship and stable Christian walk." Light of Life holds praise and worship services two times each day in its chapel during which it preaches Jesus Christ's message of hope.

Plaintiff has not contested the validity of the facts set forth above. However, Plaintiff has submitted an EEOC Determination Letter that concluded that Light of Life did not qualify for the religious exemption. Plaintiff also submitted a newspaper article stating, in relevant part, that 46 cents of every dollar donated to Light of Life went to a California fund-raising company, that Light of Life owned six properties, including one that was rented to a business selling comic books, and that Light of Life received federal grants. Plaintiff contends that the job of program aide does not require him to provide religious counseling, conduct religious services or participate in religious activities. Defendant does not contest this fact. Plaintiff further contends that he complied with Defendant's Christian policies, for example by answering the telephone: "Christ is the answer, Light of Life Mission." Plaintiff argues that further discovery is needed to investigate Light of Life's funding sources, real estate holdings and other traditional business ventures.

Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The evidence must be capable of being admissible at trial. *Barnes Foundation v. Township of Lower Marion*, 982 F. Supp. 970, 996 (E.D. Pa. 1997) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

Discussion

In 42 U.S.C. § 2000e-1, Congress created an exemption for religious organizations, stating that Title VII shall not apply "to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."  In other words, a "religious" organization is permitted to discriminate on the basis of religion.  *See Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006).  For example, it is lawful for a synagogue to employ only Jewish rabbis.  The "religious

exemption" is clearly at issue because the Complaint alleges that Light of Life refused to hire Jackson because of his religion.

In *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints v. Amos*, 483 U.S. 327 (1987), the Supreme Court held that Section 2000e-1 was constitutional. The Court concluded that the Defendant could discharge a building engineer working at a gymnasium for failing to meet religious qualifications. In a concurring opinion, Justice Brennan proposed a bright-line rule that non-profits would categorically qualify for the exemption in Section 2000e-1, reasoning that a judicial inquiry into whether an organization is secular or religious risks chilling the First Amendment rights of such organizations.

In *Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991), the Court of Appeals explained that the religious exemption in Section 2000e-1 should be interpreted broadly. *Id.* at 945. The Court held that a Catholic school could terminate a teacher for entering into a marriage not recognized by the Catholic Church. The Third Circuit cited with approval to *Feldstein v. Christian Science Monitor*, 555 F. Supp. 974 (D. Mass. 1983), in which the Court concluded that the Christian Science Monitor publication was a religious activity free to discriminate based on religion in hiring reporters, even though the publication involved primarily secular topics. *Little*, 929 F.2d at 948. The Third Circuit recognized the grave danger and constitutional concerns courts face when asked to rule on religious and theological questions. *Id.* at 948-49. The Court explained that not only the conclusion, "but also the very process of inquiry" may impinge First Amendment rights, noting that inquiry into an employer's mission was a singularly inappropriate topic for judicial scrutiny. *Id.* at 949. The Court concluded that the religious exemption covers **all** employees, whether or not they are engaged in religious activities. *Id.* at 951 (emphasis

added). In other words, the term "its activities" in Section 2000e-1 is construed to mean **all** of an organization's actions, whether or not they directly involve religion. In sum, the Third Circuit in *Little* concluded that the "religious exemption" reflects a decision by Congress that "the governmental interest in eliminating religious discrimination by religious organizations is outweighed by the rights of those organizations to be free from government intervention." *Id. Accord Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.3d 130 (3d Cir. 2006) (upholding Title VII religious exemption and recognizing constitutional problems arising from court's assessment of organization's religious doctrines).

In *Leboon v. Lancaster Jewish Community Center*, 2005 WL 387642 (E.D. Pa. 2005), the Court held that a local gymnasium/community center was entitled to the religious exemption in a claim by a bookkeeper/business manager. *Leboon* listed eight factors, originally compiled by a Texas state court, to evaluate in determining whether an organization is "religious": (1) profit or non-profit status; (2) whether an administrative agency has determined its status; (3) whether the articles of incorporation state a religious purpose; (4) whether it holds itself out as a religious entity; (5) whether the church is intimately involved in day-to-day operations; (6) whether a church supports or is affiliated with the entity; (7) adherence to or deviation from an original religious purpose; and (8) whether the entity conducts religious activities, services or instruction. *Id.* at *2 n.2 (citation omitted).

While the Court acknowledges the factors set forth in *Leboon*, certain of the factors appear to be inconsistent with binding precedent and other factors merit further comment. The first factor, non-profit status, should be given significant weight, for the reasons set forth in Justice Brennan's concurrence in *Amos*. The second factor cited in *Leboon* will be disregarded.

Because there are significant constitutional issues involved in this area of law, it would be inappropriate for a court to blindly defer to the quasi-judicial findings of an administrative agency.[1]  *See Dickerson v. Metro Dade County*, 659 F.2d 574, 579 (5th Cir. 1981) (in Title VII litigation, district courts review evidence *de novo*, independent of any determination by EEOC). The third, fourth and fifth factors are valid, and a statement of religious purpose in the articles of incorporation is entitled to great weight.  The sixth factor, church affiliation, is an appropriate factual consideration.  However, a "non-denominational" or "unaffiliated" religious organization is entitled to the religious exemption on the same basis as an entity related to a single church. The seventh factor, whether the entity is adhering to its original purpose, is improper.  The Supreme Court and Third Circuit have repeatedly warned about the constitutional dangers involved in evaluating a religious organization's doctrine and conduct.  *See, e.g., Amos*, 483 U.S. at 345 (Brennan, concurring).  An inquiry by a federal court into whether an entity is faithfully adhering to its statements of purpose is fraught with danger, will have a chilling effect on the religious organization's right of free exercise, and will unnecessarily entangle the government in religious affairs.  *See Little*, 929 F.2d at 948-49.  Thus, the Court will not engage in this type of inquiry.  The final factor, whether an entity conducts religious services, is potentially powerful evidence, although the weight accorded this factor should depend on the frequency of such services.  It is not necessary for an organization to satisfy each of these factors to qualify for the

---

[1] The EEOC Determination Letter in this case is illustrative.  A review of the EEOC's determination reveals that the investigator applied the wrong legal test.  The Determination Letter considered whether participation in religious activities was a qualification for the specific job Jackson held, rather than applying the principle enunciated in *Little* and *Curay-Cramer*, i.e., that the religious exemption applies to **all** employees of religious organizations.  The EEOC Determination Letter did not even reach the question of whether Light of Life is a "religious" organization.

exemption. Indeed, it may be possible for an entity to establish that it is "religious" based solely upon its governing and organizational documents. Thus, the Court will apply six of the factors set forth in *Leboon* in a "totality of the circumstances" test.

Applying the *Leboon* factors, as modified above, to the facts of this case, the Court concludes that Light of Life qualifies for the religious exemption as a matter of law: (1) Light of Life is a non-profit corporation; (2) Light of Life's Articles of Incorporation contain a clear statement of religious purpose. Light of Life has also published Mission Statements, a Doctrinal Statement, a Statement of Faith and Core Values that are heavily laced with religious references; (3) Light of Life holds itself out to the public as a religious entity, apparently even including its telephone greeting; (4) there is no evidence of record to determine whether or not a specific church is intimately involved in day-to-day operations; (5) Light of Life receives an unspecified amount of financial support from churches. Light of Life's Statement of Faith "affirms and identifies" an affiliation with the ECFA, although the record does not explain whether the ECFA is a church. The Doctrinal Statement identifies with Protestant and Evangelical churches; and (6) Light of Life conducts two religious services each ***day***.

The evidence that Light of Life is structured and holds itself out as a religious organization is simply overwhelming. The corporate acts of creating and adopting a Statement of Faith and a Doctrinal Statement should be dispositive evidence that an entity is "religious." Moreover, the numerous explicit religious references in the Articles of Incorporation, Mission Statement and Core Values are independently dispositive. Indeed, it is difficult to imagine what more an organization could reasonably do to proclaim its religious purpose.

Plaintiff does not contest any of these facts, but instead contends that his specific job did

not require participation in these religious activities. For the reasons set forth above, this is not the proper legal test. Even assuming, arguendo, that the facts contained in the newspaper article and EEOC Determination Letter submitted by Plaintiff were true, and giving Plaintiff every reasonable inference therefrom, Light of Life would still be entitled to summary judgment. Similarly, even if the discovery sought by Plaintiff were permitted[2] and revealed that Light of Life had extensive real estate holdings, engaged in numerous business-related activities and received little or no church funding, the legal analysis would not change. As the Supreme Court and Third Circuit have instructed, secular activities will not destroy an organization's religious character and the religious exemption applies to all of its employees. *Amos* and *Leboon* involved gymnasiums and *Feldstein* involved a secular magazine. Accordingly, the Court concludes that there are no genuine issues of material fact regarding whether Defendant is a religious organization and Light of Life is entitled to the "religious exemption" in Section 2000e-1 as a matter of law.

There is an independent, alternative basis for the Court's conclusion. Defendant contends that the newspaper article and EEOC Determination Letter submitted by Plaintiff do not create genuine issues of material fact, and thus cannot be used to defeat a motion for summary judgment. The Court agrees. A newspaper article is inadmissible hearsay and thus, cannot be considered in ruling on summary judgment. *See Barnes Foundation,* 982 F. Supp. at 996. EEOC determination letters are admissible, but cannot defeat summary judgment. *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005); *Septimus v. University of Houston*, 399

---

[2]The requested discovery is improper because it would necessitate precisely the inquiry of whether Light of Life is adhering to its religious mission that was foreclosed by *Little*.

F.3d 601, 610 (5th Cir. 2005). As explained above, the EEOC Determination Letter in this case applied the wrong legal standard. Plaintiff has not submitted any other evidence in opposition to the motion. Thus, in addition to the substantive reasons set forth above, the Court will grant the motion for summary judgment based on Plaintiff's failure to introduce evidence sufficient to create any genuine issue of material fact.

Conclusion

For the reasons set forth above, DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (*Document No. 4*), will be **GRANTED**.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND G. JACKSON,** | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-1779 |
| | ) | |
| v. | ) | |
| | ) | |
| **LIGHT OF LIFE MINISTRIES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 16th day of October, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (*Document No. 4*), is **GRANTED**.  Count One of the Complaint is dismissed with prejudice.  Defendant is ORDERED to file its Answer to Count Two of the Complaint within ten (10) days.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Gregory G. Paul, Esquire
      Email: gpaul@peircelaw.com

      Joseph F. Quinn
      Email: jfquinn@klettrooney.com

      Bobbi Britton Tucker
      Email: bbrittontucker@klettrooney.com

      Brian D. Balonick
      Email: bdbalonick@klettrooney.com